IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

TODD M. F.,[1]

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

Case No. 20–CV–00739–JPG

## MEMORANDUM & ORDER

In accordance with 42 U.S.C. § 405(g), Plaintiff, represented by counsel, seeks judicial review of the final agency decision denying his applications for Disability Insurance Benefits (DIB) and a period of disability pursuant to 42 U.S.C. §§ 416(i) and 423 and Supplemental Security Income (SSI) pursuant to 42 U.S.C. §§ 1381a and 1382(a).

### Procedural History

Plaintiff applied for DIB and SSI on May 6, 2014, alleging disability beginning March 24, 2011. The claim was denied on August 22, 2014. The Plaintiff filed a written request for a hearing and after holding an evidentiary hearing on April 4, 2017, Administrative Law Judge (ALJ) Kellie Wingate Campbell ("ALJ Campbell") denied the application in a written decision dated May 3, 2017. (Tr. 16-24). The Appeals Council denied review on November 17, 2017. Plaintiff filed a complaint in this district asking the court to review the administrative decision and U.S. Magistrate Judge Clifford Proud issued remanded this case for a rehearing and reconsideration of the evidence.[2] (Tr. 573-85). On remand, the ALJ held a second administration

---

[1] The Court will not use plaintiff's full name in this Memorandum and Order to protect the plaintiff's privacy. See Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] The magistrate judge remanded the decision denying plaintiff's application for DIB because the vocational expert ("VE") was not reliable and therefore the ALJ erred at step five on relying on the VE testimony because of an

hearing in August 2019, during which Plaintiff and a vocational expert ("VE") testified. (Tr. 512-538). ALJ Campbell issued a second decision dated September 18, 2019, denying the application for a second time. (Tr. 495-505). The ALJ found Plaintiff was not disabled, Plaintiff had performed substantial gainful activity ("SGA") since his alleged onset date. (Tr. 497-98). The ALJ found Plaintiff performed SGA from March 2011 to December 2011, noting Plaintiff admitted he worked full time on light duty and was let go after requesting two days of leave. (Tr. 497). ALJ found that Plaintiff's left shoulder osteoarthritis and chondromalacia (status post arthroscopic surgeries), bilateral knee osteoarthritis, and obesity constituted severe impairments, but that none of Plaintiff's impairments—singly or in combination—met or equaled the severity of any listed impairment. (Tr. 498-99). The ALJ found he had residual functional capacity ("RFC") to perform light work subject to limitations such as: climbing ladders, ropes, scaffolds, no exposure to unprotected heights, climb ramps and stairs, stop and crouch, kneel or crawl, occasionally reach overheard with left arm. (Tr. 499, 503, 504).

The Appeals Council denied review a second time on July 8, 2020, and the decision of the ALJ became the final agency decision. (Tr. 1-6). Administrative remedies have been exhausted and a timely complaint was filed in this Court.

### Issues Raised by Plaintiff

Plaintiff raises the following points:

- Period of disability (POD)

- The ALJ failed to properly evaluate residual functional capacity (RFC).

---

unresolved conflict between the VE testimony and the Dictionary of Occupational Titles (DOT). The magistrate judge expressly states that the court stresses its Order "should not be construed as an indication that the Court believes that plaintiff was disabled during the relevant time or that he should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard and leaves those issues to be determined by the Commissioner after further proceedings." *See* Memorandum and Order, Case No. 3:18-cv-00019-CJP (dated November 13, 2018).

**<u>Applicable Legal Standards</u>**

To qualify for benefits, a claimant must be "disabled" pursuant to the Social Security Act. The Act defines a "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).[3] The physical or mental impairment must result from a medically demonstrable abnormality. 42 U.S.C. § 423(d)(3). Moreover, the impairment must prevent the plaintiff from engaging in significant physical or mental work activity done for pay or profit. 20 C.F.R. § 404.1572.

Social Security regulations require an ALJ to ask five questions when determining whether a claimant is disabled. The first three questions are simple: (1) whether the claimant is presently unemployed; (2) whether the claimant has a severe physical or mental impairment; and (3) whether that impairment meets or is equivalent to one of the listed impairments that the regulations acknowledge to be conclusively disabling. 20 C.F.R. § 404.1520(a)(4); *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011). If the answers to these questions are "yes," then the ALJ should find that the claimant is disabled. *Id*.

At times, an ALJ may find that the claimant is unemployed and has a serious impairment, but that the impairment is neither listed in nor equivalent to the impairments in the regulations— failing at step three. If this happens, then the ALJ must ask a fourth question: (4) whether the claimant is able to perform his or her previous work. *Id*. If the claimant is not able to, then the

---

[3] The statutes and regulations pertaining to DIB are found at 42 U.S.C. § 423 *et seq*. and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c *et seq*. and 20 C.F.R. pt. 416. As is relevant to this case, the DIB and SSI statutes are materially the same. *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020). Furthermore, 20 C.F.R. § 416.925, which details medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

burden shifts to the Commissioner to answer a fifth and final question: (5) whether the claimant

is capable of performing any work within the economy, in light of the claimant's age, education,

and work experience. If the claimant cannot, then the ALJ should find the claimant to be

disabled. *Id.*; *see also Simila v. Astrue*, 573 F.3d 503, 512-13 (7th Cir. 2009); *Zurawski v. Halter*,

245 F.3d 881, 886 (7th Cir. 2001).

A claimant may appeal the final decision of the Social Security Administration to this

Court, but the scope of review here is limited: while the Court must ensure that the ALJ did not

make any errors of law, the ALJ's findings of fact are conclusive as long as they are supported

by "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence is evidence that a reasonable

person would find sufficient to support a decision. *Weatherbee*, 649 F.3d at 568 (citing *Jens v.

Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003)). The Court takes into account the entire

administrative record when reviewing for substantial evidence, but it does not reweigh evidence,

resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the

ALJ. *Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997); *Moore v. Colvin*, 743 F.3d 1118,

1121 (7th Cir. 2014). But even though this judicial review is limited, the Court should not and

does not act as a rubber stamp for the Commissioner. *Parker v. Astrue*, 597 F.3d 920, 921 (7th

Cir. 2010).

## The Decision of the ALJ

ALJ Campbell followed the five-step analytical framework described above. She

determined that Plaintiff was not disabled under sections 216(i) and 223(d) of the Social Security

Act. The ALJ found that plaintiff had the following severe impairments: left shoulder

osteoarthritis and chondromalacia status post arthroscopic surgeries, bilateral knee osteoarthritis,

and obesity. (Tr. 498). She further found these impairments had more than a minimal effect on

plaintiff's ability to perform basic work activities for a continuous period of 12 months. (Tr. 498). ALJ Campbell found all other impairments mentioned by plaintiff and the medical records are not severe under SSA regulations. Specifically, the ALJ rejected the notion that Plaintiff's diabetes, obstructive sleep apnea, gout, hypertension, hyperlipidemia, hemorrhoids, TMJ disorder, left finger osteoarthritis, mild right wrist osteoarthritis, and diverticulitis were severe impairments that significantly limited Plaintiff's ability to perform basic work activities. (Tr. 498). The ALJ found that Plaintiff's testimony that he has difficulty sleeping due to daytime drowsiness from obstructive sleep apnea was inconsistent with testimony with treating records that demonstrated Plaintiff denied either excessive daytime sleepiness or trouble driving to his doctor. (Tr. 498). The ALJ did not find any impairment or combination of impairments met or equaled a listed impairment. She specifically considered listing 1.02 for major dysfunction of a joint and found the criteria of Listing 1.02 were not satisfied in the instant case. (Tr. 498).

The ALJ found, after examination of the record, Plaintiff had the residual functional capacity to perform light work. Specifically, after Plaintiff had a 2011 shoulder injury and 1996 knee surgery, Plaintiff alleged a disability. The ALJ determined, after considering all the evidence, that Plaintiff's determinable impairments could reasonably be expected to cause the symptoms but Plaintiff's statements regarding the intensity, persistence, and limiting effects of the symptoms were not entirely consistent with medical evidence and other evidence in the record. While Plaintiff reported constant pain in his knees and difficulties walking, bending, kneeling, and squatting, he can also drive, shop around in grocery stores, and walk five hundred feet before needing to rest, such testimony was not entirely consistent with medical evidence in the record. (Tr. 499).

The ALJ noted that the Plaintiff testified twice – one in 2017 and the second hearing in 2019. Plaintiff testified his conditions have worsened between the two hearings, where in 2019 he has been unable to have knee or left shoulder surgeries although he has insurance. He had to stop five times during his drive to St. Louis 110 miles away for the hearing. He is able to drive to St. Louis for doctor appointments, mows his yard once or twice a week for forty-five minutes, and is able to hold his grandchildren when sitting down. (Tr. 500).

The ALJ reviewed the medical evidence on his shoulder and determined that while Plaintiff retained the ability to perform light work, due to decreased ability, strength and complaints of pain, he was limited to only occasional overhead reaching with left non-dominant upper extremity. (Tr. 501). Additionally, regarding his knees, medical evidence supports Plaintiff's knee impairments are limiting. However, his ability to drive, shop, use lawn mower, and other light chores show he is reasonably able to retain the ability to perform light work with no climbing and no exposure of unprotected heights. The ALJ also reviewed medical evidence after the first hearing, which showed consistency of complaints and treatment rather than a progressive worsening of symptoms. (Tr. 501). The ALJ noted that in August 2017, a doctor who examined Plaintiff noted "good range of motion in all major joints with normal function" and no focal deficits. (Tr. 501). In November 2017, an examination found mild right crepitus and some right knee swelling but he had full range of motion without pain. (Tr. 501). Additionally, a later 2018 exam demonstrated no swelling and a normal range of motion, suggesting he is reasonably limited to light work. (Tr. 501). Regarding the Plaintiff's obesity, the ALJ indicated that Plaintiff was advised to lose weight but treating records were absent for prescription for assistive walking device or injuries relating to combination of obesity and physical impairments. (Tr. 502).

The ALJ gave partial weight to Dr. Julio Pardo who opined Plaintiff could perform light work with frequent overheard reaching with left upper extremity and occasional climbing, but otherwise unlimited postural activities because he did not consider the effects of claimant's bilateral knee arthritis. (Tr. 502). The ALJ also gave limited weight to Dr. Raymond Cohen because it was consistent with Plaintiff's imaging and history of shoulder surgeries. However, the rest of the testimony was given little weight because his finding of disability was based on workers' compensation criteria rather than criteria for disability under the SSA, was inconsistent with medical evidence, imaging, treatment history, work activity after 2011, and Plaintiff's activities including yard work, and driving and walking regularly. The ALJ gave little weight to Dr. D. Rock Oh and the September 2016 assessment by counselor James England. (Tr. 503).

The ALJ found the objective medical evidence in the record supported the above residual functional capacity assessment.

<u>**The Evidentiary Record**</u>

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the points raised by Plaintiff and is confined to the relevant time period.

1. **Agency Forms**

Plaintiff was born on February 11, 1964, and was 52 years old at his alleged onset date of March 24, 2011. (Tr. 158, 495). He was last insured through December 31, 2016. (Tr. 496). He had worked as a carpenter/builder or otherwise in construction. (Tr. 35, 451). He had obtained at least a high school education. (Tr. 504).

2. **Evidentiary Hearing**

On April 4, 2017, ALJ Campbell held a video evidentiary hearing. At the hearing Plaintiff was represented by Frank A. Williams. (Tr. 32-53). On August 6, 2019, the ALJ held a rehearing and requested a stipulation regarding the fact Plaintiff had a high school education, his past work as a carpenter, the fact he was not able to perform his past work based on a residual functioning capacity. The attorney for Plaintiff agreed. (Tr. 517).

At the previous hearing, Plaintiff testified he lived with his wife and 18-year old son. (Tr. 42). Plaintiff testified that the last documented work experience he had was with Champion Window Company. Before that he worked with his father in carpentry. (Tr. 35-36). Plaintiff indicated that after his shoulder injury he has not been able to lift any weight and his knees are full of arthritis. (Tr. 37). Plaintiff indicated he cannot lift anything overhead his left shoulder and can only lift around 5-6 pounds. (Tr. 40).

At the previous hearing, Plaintiff testified that his knees are full of arthritis, and even with injections in his left knee he cannot stand longer than 20 minutes, has difficulty walking, bending, kneeling. (Tr. 37, 41). He indicated he was prescribed anti-inflammatory pills but did not try to get his pain meds refilled. (Tr. 41).

Additionally, at the previous hearing he testified as to his sleep apnea, for which he uses a CPAP machine (Tr. 37, 41). The machine is old and therefore he only gets three or four hours a night. (Tr. 42). He indicated that after his carpentry work, he did not look for work that would have been less physically strenuous. (Tr. 38-39). During the day he naps a lot, watches the news, and reads. (Tr. 42). He mows his lawn by using a rider and uses his right arm to steer. (Tr. 43).

Plaintiff was injured in March 2011, but went back to work on restricted duty. When he went back to work he was in "light duty" or supervising newer employees. (Tr. 44). He did not do physical work because he could not do so. (Tr. 45). Plaintiff testified he was terminated in

early December because he needed some time off and his work was not able to accommodate so they told him not to come back. (Tr. 44).

At the time of the rehearing, the ALJ indicated nothing had changed regarding the residual functioning capacity finding at the previous hearing and Plaintiff's counsel agreed. (Tr. 518). Plaintiff indicated that he traveled to St. Louis occasionally for doctors' visits. (Tr. 519-520). He indicated he did not take any other trips, or engage in any other recreational activities or hobbies except mowing the grass with the riding lawnmower once or twice a week. (Tr. 520). He testified he has three grandchildren and they can sit on his lap but cannot assist in babysitting activities. (Tr. 521).

Plaintiff indicated at the rehearing that his doctors told him his left shoulder needed to be replaced. (Tr. 525). Plaintiff also indicated he has numbness in his hands and toes due to his diabetes, but he does not need to go on insulin at this point. (Tr. 526). He indicated he is 320 pounds. (Tr. 526).

He experiences pain in his knees, takes Aleve and places ice on them to relieve the pain. He props them up around 4-6 times throughout the day per day. (Tr. 527). Plaintiff testified his pain and limitations have worsened since the last hearing in 2017 because he hasn't had the surgeries needed for his knees and shoulder. (Tr. 528).

The VE also testified at the hearing (Tr. 46-53). After the magistrate court remanded this issue because it found the testimony of the VE unreliable, the VE testified again at the rehearing. The VE testified that an individual of Plaintiff's age, education, work history, and that who is capable of work at a light exertional level without climbing or exposed to heights, can work in the national economy within those limitations. (Tr. 531). The VE testified that this was her

professional opinion as a vocational rehabilitation counselor and job placement specialist for 20 years. (Tr. 533).

The VE cited three separate examples of light and unskilled occupations where overhead reaching was not required more than an occasional basis. (Tr. 532). The VE indicated Plaintiff could have an occupation of cashier, cafeteria attendance, or small products assembler. (Tr. 532). The VE indicated occasional reaching for these three positions is not addressed by the DOT and so the VE utilized on their professional opinion as a vocational rehabilitation counselor and job placement specialist. (Tr. 532). The VE indicated there were no transferable skills from the position of carpenter to sedentary work. (Tr. 534).

### 3. Medical Records

The record contains medical records that indicate regular visits with a primary care physician, imaging notes, orthopedic, and others.

- March 25, 2011 notes from physician from emergency department after work accident complaining of shoulder pain, indicating no fracture or dislocation. (Tr. 283).

- January 11, 2012 shoulder arthrogram indicating mild joint arthritic change (Tr. 290).

- April 7, 2011 doctor notes indicate that the issues he was having were hypertension (Tr. 349, 351).

- September 20, 2012 – patient notes indicate pain in the right wrist due to playing tennis (Tr. 339-40, 343-44). Doctor notes that Plaintiff indicated he "is not having any trouble with driving at all." (Tr. 344). At follow ups, he indicated he was having much pain and feeling improved in his wrist. These notes also indicate that Plaintiff was obese and recommended he try to lose weight. (Tr. 333, 337, 433, 435).  January 17, 2014, at a follow up, patient notes indicate Todd lost some weight and has been doing well but his weight continued to increase after that date. (Tr. 330-34, 435).

- From 2011-2014 his primary care records do not contain any reference to his work injury or shoulder complaints of pain except a note in July 2011 where Plaintiff indicated he was going to therapy after shoulder surgery and August 2014 note he is seeing a doctor for his shoulder problems. (Tr. 453).

- March 27, 2014 – doctor notes indicate he is okay with simple activities, but Plaintiff complains of pain and walks 4-5 times per week. (Tr. 371-72). At a subsequent follow

up, doctor recommended a "capsular release" surgery. At a post-op visit, Plaintiff is slowly improving and continues to improve months after his surgery. (Tr. 384-389).

- January 6, 2015 – doctor notes indicate Plaintiff had "capsular release" in July 2014 and has decreased range of motion. Doctor notes indicate Plaintiff complained of progression of pain. (Tr. 364-65).

- September 3, 2015, letter from Dr. Cohen indicating it was his expert opinion Plaintiff needs to be restricted from overheard work and very limited lifting (2-3 pounds), with a 40% permanent partial disability in his right knee (Tr. 458-59).

- March 7, 2016 - May 11, 2016 indicate records of injections Plaintiff received in his knee, and he indicates he has slight improvement in pain. (Tr. 461-484).

After the remand of the hearing by the magistrate judge, the following medical records were provided that the ALJ reviewed and considered:

- August 2017, Plaintiff fell down the stairs and his back. The doctor conducted a physical and indicated "good range of motion in all major joints." (Tr. 746).

- November 30, 2017 – visit with primary care physician where he indicates he has knee pain but "mild" pain and "no tenderness." (Tr. 773-740).  There is no mention of shoulder pain during this visit but references the back pain from after his fall. (Tr. 774).

- October 10, 2018 – visit with primary but no reference to shoulder or knee pain.

- April 26, 2019 – follow up with primary indicates that has a decreased range of motion in his left shoulder due to "old work injury." (Tr. 785). No reference to pain.

**4.  State Agency Physicians/Consultants**

State agency consulting physician B. Rock Oh evaluated Plaintiff on August 22, 2014. (Tr. 54-60). He opined that Plaintiff is "not disabled" given the individual's age, education, and RFC. (Tr. 59). He stated that the individual can adjust to other work. He indicated that the following are three occupations the Plaintiff can do: conveyor loader, messenger, colorer. (Tr. 57).

State agency consulting physician Julio Pardo found that while Plaintiff's allegations of limitations are partially credible and his impairments cause some limitations, Plaintiff is capable

of light work activity. (Tr. 66). March 2015, Dr. Pardo opined that Plaintiff could perform a reduced range of light work with the following restrictions: occasionally climb ladders, ropes, or scaffolds and frequently reach overhead with the left arm. (Tr. 66-68). Dr. Pardo indicated Plaintiff can occasionally lift 10 pounds, stand or walk with normal breaks (about 6 hours in an 8-hour workday), limit any push or pull potential, and that Plaintiff is capable of frequently operating hand controls. (Tr. 66-67). Dr. Pardo could have the following potential occupations: panel-lay-up worker for woodworking, spindle carver, or rip-and-groove machine operator. (Tr. 69-70). Dr. Pardo found Plaintiff was not disabled. (Tr. 70). He further found while the conditions cause him some limitations, he is able to conduct less demanding work and that his condition was not severe enough to keep him from working. (Tr. 70).

<u>Analysis</u>

### 1. Alleged Onset Date

Plaintiff asserts that Plaintiff's alleged onset date should be amend to March 27, 2014. (Doc. 23 at 4). Plaintiff indicates that such an onset date should be amended when he began treatment with Dr. Randall Otto. *Id*. Therefore, Plaintiff indicated that his brief will focus on evidence from March 2014 through the date of last insured on December 31, 2016. *Id*. Defendant argues that this request to amend should be rejected. (Doc. 27).

The Court agrees with Defendant. This is the first time Plaintiff asserts such a request. The Plaintiff was required to raise all issues at the administrative hearing to preserve them on appeal, and failure to do so deems the issue waived. *Schnorr v. Comm'r of Soc. Sec. Admin*., No. CV-20-00712-PHX-DLR, 2021 WL 3030218, at *1 (D. Ariz. July 19, 2021) ("By failing to amend her onset date previously, Plaintiff waived the issue."). "It is not the Court's role to excise most of the evidence supporting the ALJ's decision and thereafter assess whether the remaining evidence supports the ALJ's decision." *Id*. This request is therefore denied.

**2.   Whether the ALJ's Determination that Plaintiff Could Perform Reduced Range of**
**Light Work**

Plaintiff argues the ALJ failed to properly evaluate of RFC. A disability claimant's RFC describes the maximum he can do in a work setting despite her mental and physical limitations. 20 C.F.R. § 404.1545(a). When determining an individual's RFC, the ALJ must consider all limitations that arise from medically determinable impairments. *Thomas v. Colvin*, 745 F.3d 802, 807 (7th Cir. 2014). In finding that Plaintiff was capable of a reduced range of light work, the ALJ considered the medical opinions in the record, the treatment records reflecting Plaintiff was not taking pain medication for his alleged disabling impairments, and Plaintiff's activities, including his mowing and traveling. (Tr. 498-503). The Court finds, after review of the entire administrative record, finds the ALJ's decision was supported by substantial evidence.

**a.   Failure to Give Adequate Weight to Physicians**

Plaintiff first argues the ALJ failed to fully and fairly develop the evidence of Dr. Randall Otto from Premier Care Orthopedics and Sports Medicine. (Doc. 23 at 8). Plaintiff contends that Dr. Otto filled out a form confirming Plaintiff had permanent restrictions and limitations, which may change if his disease worsens. *Id*. Plaintiff argues that the form is not in evidence and the ALJ was obligated to obtain a copy of Dr. Otto's medical opinion when the ALJ became aware of its existence. (Doc. 23 at 8). However, it was Plaintiff's obligation to ensure the record was complete. The Seventh Circuit recognizes that "a claimant represented by counsel is presumed to have made her 'best case' before the ALJ," and has not allowed a claimant to succeed on claims of an undeveloped record where the claimant's "attorney explicitly told the ALJ that the record was complete even after the ALJ remarked that only two pieces of third-party correspondence were in the record." *McFadden v. Astrue*, 465 F. App'x 557, 560 (7th Cir. 2012). The ALJ

inquired with Plaintiff's counsel to ensure the record was complete, and both the 2017 and 2019 hearings. (Tr. 33, 516). At the 2019 hearing, Plaintiff's counsel indicated the only additional materials to complete the record were another "rating exam" related to Plaintiff's workers compensation claim (Tr. 516). When asked if the record was complete, Plaintiff's counsel indicated it was complete. (Tr. 516).

Additionally, the ALJ left the record open for 30 days after the hearing to obtain and submit any additional evidence. (Tr. 528). Instead of raising this issue at the chance to supplement the record, Plaintiff's counsel has raised this issue during a second appeal. The Court rejects Plaintiff's argument.

Next, Plaintiff contends the ALJ's erred in evaluating Plaintiff's treatment records and ultimately finding a limitation to occasional overhead reaching with the left arm was insufficient. The Court disagrees. The ALJ considered Plaintiff's history or left shoulder issues stemming from his 2011 work site injury. (Tr. 500-03). The ALJ noted that after Plaintiff's work injury at the onset date in March 2011, Plaintiff returned to full time work in a light duty position from March to December 2011 and was let go after requesting personal leave. (Tr. 500).

The ALJ also discussed Plaintiff's left shoulder. (Tr. 500). The ALJ acknowledged a July 2014 imaging which showed grade III-IV chonrosis, the ALJ determined most imaging in the record only showed mild to moderate findings. (Tr. 500). Specifically, the ALJ noted that examinations showed decreased left shoulder range with clicking, popping, crepitus, atrophy, and some pain with shoulder impingement testing. Additionally, exams demonstrated 3+/5 to 5/5 in left shoulder and 5/5 strength in right shoulder. The exam indicated no distress, intact shoulder stability, normal right shoulder with full range of motion, and improved range of motion in left shoulder following 2014 surgery. (Tr. 500).

Additionally, the ALJ determined that the record shows little treatment after 2015 for his left shoulder impairment. This is the main basis for Plaintiff's disability. Plaintiff cites only two treatment records that underly its claim – visit with Dr. Otto in January 2015 and an exam with Dr. Raymond Cohen in September 2015 in connection with his workers' compensation claim. (Doc. 23 at 8-10). Additionally, the ALJ found that treatment notes in 2014 indicate improvement from his pre-operative status and Plaintiff was able to perform tasks such as driving, light chores, grocery shopping, and mowing. (Tr. 500). Plaintiff never returned to Dr. Otto in January 2015 and after Dr. Otto recommended a conservative course of treatment. Additionally, Plaintiff testified that he never refilled his prescription or take over-the-counter pain medication. (Tr. 501).

Upon a review of the record, during an exam in August 2017 a doctor observed good range of motion in all major joints and the only musculoskeletal complaint Plaintiff reported was lumbar back pain after a fall. (Tr. 746). Additionally, during an April 2019 exam Plaintiff referenced he was experiencing no pain in his knees or shoulder, was "doing well" and only referenced some decrease range of motion from an old work injury. (Tr. 501, 785). Essentially, the ALJ notes that there was little treatment after 2015, and in treatment records from 2017-2019 Plaintiff did not reference any pain in his knees or shoulder.

The ALJ also discussed the treatment records related to Plaintiff's knee osteoarthritis. (Tr. 501). ALJ acknowledged that some examination findings showed right-knee crepitus, slightly decreased range of motion in the right knee, and an antalgic gait. (Tr. 501). The ALJ highlighted exams noted no knee swelling or effusion, stable knee ligaments to stress, mostly negative knee tests and mostly no atrophy. Additionally, exams showed no significant strength deficient with 2+/4 reflexes and intact sensation and coordination. (Tr. 501). Additionally, the

ALJ noted Plaintiff has not refilled anti-inflammatory medication and does not take pain medication. (Tr. 501).

The ALJ noted there was simply a consistency of complaints and treatment rather than a progressive worsening of symptoms. (Tr. 501). The Court finds that the ALJ's evaluation of treatment notes were supported by substantial evidence. This Court does not reweigh the evidence or substitute its own judgment for that of the ALJ.

Next, Plaintiff argues that the ALJ should have given greater weight to Dr. Raymond Cohen. (Doc. 23 at 5). As stated above, ALJ gave limited weight to Dr. Raymond Cohen because it was consistent with Plaintiff's imaging and history of shoulder surgeries. However, the rest of the testimony was given little weight because his finding of disability was based off of workers' compensation criteria rather than criteria for disability under the SSA, was inconsistent with medical evidence, imaging, treatment history, work activity after 2011, and Plaintiff's activities. (Tr. 502). Dr. Cohen examined Plaintiff in September 2015 in connection with Plaintiff's workers' compensation claim and was paid for by Plaintiff's workers' compensation attorney. (Tr. 451-59). Dr. Cohen provided a detailed history of Plaintiff's history and complaints. He indicated Plaintiff should be restricted to no overhead work except on rare occasions, lifting 2-3 pounds with left arm, lifting 5-10 pounds from floor to table, lifting up to five pounds with both arms occasionally. (Doc. 458). Dr. Cohen stated Plaintiff should do limiting bending, squatting, and kneeling, and walking. Therefore, he deduced, Plaintiff was "permanently and totally disabled." (Tr. 459).

Plaintiff has two main arguments as to why the ALJ wrongfully did not give greater weight to Dr. Cohen. (Doc. 23 at 11). First, Plaintiff argues Dr. Cohen is the only physician who examined Plaintiff and reviewed the entire record. *Id*. Next, Plaintiff argues that the ALJ failed to

explain what medical evidence, imaging and treatment history is inconsistent with Dr. Cohen's testimony.

First, this Court's directive is not to reweigh evidence, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Brewer*, 103 F.3d at 1390. Second, it agrees with defendant that Dr. Cohen is not a treatment physician but was reviewing treatment records and examined him once in support of Plaintiff's workers' compensation claim, paid for by Plaintiff's workers' compensation attorney. A non-treating source is "a physician, psychologist, or other acceptable medical source who has examined you but does not have, or did not have, an ongoing treatment relationship with you." 20 C.F.R. § 404.1502. Thus, the ALJ was not required to give his opinion controlling weight and could evaluate its weight in light of the other relevant factors. *See Simila v. Astrue*, 573 F.3d 503, 514 (7th Cir. 2009); 20 C.F.R. § 404.1527(d)(2)-(6).  The Court agrees with defendant that it was proper for the ALJ to consider the lens through which Dr. Cohen was assessing Plaintiff's functional abilities and the criteria which he used. (Doc. 27 at 17). Therefore, the ALJ determined Dr. Cohen's testimony in light of other relevant factors, including testimony of other physicians and medical records.

Second Plaintiff argues that the ALJ failed to explain what medical evidence, imaging, and treatment history is inconsistent with Dr. Cohen's history. First, an ALJ "need not rehash every detail each time [she] states conclusions on various subjects." *Gedatus v. Saul*, 994 F.3d 893, 903 (7th Cir. 2021). Additionally, this Court must also determine the "importance of reading the entirety of an ALJ's decision together; anything else would result in redundancies in the analysis." *Krug v. Saul*, 846 F. App'x 403, 407 (7th Cir. 2021) (internal quotations omitted). Thus, an ALJ's analysis of a medical opinion can find support "elsewhere in [her] decision." *Deloney v. Saul*, 840 F. App'x 1, 5 (7th Cir. 2020). The ALJ consistently noted throughout her

analysis, the inconsistencies and discrepancies of Plaintiff's limited treatment record and relatively normal findings as compared to Plaintiff's allegations of continued pain.

As stated previously, the exams from Dr. Otto in July 2014 indicated improved range of motion, good strength and function dispute complaints of pain and discomfort. Additionally, the ALJ noted that at an exam on an unrelated fall in 2017, an exam noted good range of motion in all major joints with normal motor function, normal sensory, and no focal deficits. (Tr. 501). Additionally, the ALJ noted November 2017, an examination found mild right crepitus and some right knee swelling but he had full range of motion without pain and a later 2018 exam demonstrated no swelling and a normal range of motion, suggesting he is reasonably limited to light work. (Tr. 501).

Plaintiff also argues that the ALJ erred in relying on the evidence of Dr. Julio Pardo. (Doc. 23 at 13). Dr. Pardo believed that Plaintiff could perform light activity with the following limitations: occasionally climb ladders, ropes, scaffolds, and frequent overhead reach with the left arm. (Tr. 66-68). However, the ALJ gave his opinion partial weight because Dr. Pardo did not consider the effects of Plaintiff's bilateral knee arthritis would warranted greater restrictions on postural activities and no exposure to unprotected heights. (Tr. 502). However, the ALJ did find credible Dr. Pardo's opinion that while his conditions cause him some limitations, he is able to conduct less demanding work and his condition was not severe enough to keep him from working. *Id*.

Plaintiff argues that Dr. Pardo rendered his opinion in March 2015, which is before the evidence Plaintiff received injections in his knees in early 2016. (Doc. 23 at 13-14). However, even if Dr. Pardo's opinion was issued before 2016, the ALJ already provided his opinion partial weight for not considering the effects of his bilateral knee arthritis. (Tr. 502). Additionally, the

ALJ considered that after May 2016 there is no further treatment of his knee pain in the record.

Additionally, the ALJ noted that Plaintiff testified during his April 2017 hearing that he was not

taking medication and stopped refilling his prescription for his pain despite having insurance.

(Tr. 499-501). Additionally, the ALJ noted that in 2017-2019, the Plaintiff's examination on an

unrelated back accident showed good range of motion in all joints. (Tr. 501). The Court finds

that the ALJ properly weighed Dr. Pardo's testimony.

### b.   Failure to Provide Adequate Weight to Daily Activities Testimony

Lastly, Plaintiff argues ALJ failed to properly evaluate Plaintiff's activities of daily

living. (Doc. 23 at 12). When evaluating subjective symptoms in a disability claim, the ALJ

should first determine whether the claimant has a medically determinable impairment that could

reasonably be expected to produce those symptoms. The ALJ should then consider all the

relevant evidence in the record to determine how the intensity and persistence of the symptoms

limit the claimant's ability to perform work-related activities. 20 C.F.R. § 404.1529(a); *see* Soc.

Sec. Ruling (SSR) 16-3p, Evaluation of Symptoms in Disability Claims, 2017 WL 5180304, at

*3-*4 (S.S.A. Oct. 25, 2017); *Wilder v. Kijakazi*, 22 F.4th 644, 653-54 (7th Cir. 2022). In

evaluating the intensity, persistence, and limiting effects of symptoms, the ALJ must consider the

objective medical evidence, the claimant's statements of the symptoms' intensity, persistence

and limiting effects, medical source statements, non-medical source statements, as well as the

other relevant factors set forth in 20 C.F.R. 404.1529(c)(3). SSR 16-3p, 2017 WL 5180304, at

*5-*8. Those specific factors include "the claimant's daily activities, [his] level of pain or

symptoms, aggravating factors, medication, treatment, and limitations." *Villano v. Astrue*, 556

F.3d 558, 562 (7th Cir. 2009). The ALJ must give "specific reasons for the weight given to the

individual's symptoms, be consistent with and supported by the evidence, and be clearly

articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 2017 WL 5180304, at *10.

However, the ALJ did consider the evidence of his activities. (Tr. 499-502). The ALJ noted that although Plaintiff complained of pain, he was able to perform light chores, drive, go grocery shopping, and use a rider mower once or twice a week. (Tr. 500-01). As such, the ALJ considered not just Plaintiff's testimony, but also medical source statements, the non-medical source statements. As such, the ALJ found that there was an inconsistency in Plaintiff's statements regarding persistence of pain and the fact he did not refill pain medication, and medical records from 2017 and 2018 indicate a doctor examined Plaintiff and noted there was good range of motion in all joints. An ALJ's findings about a claimant's subjective symptoms are entitled to great deference and should be upheld unless patently wrong. *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017). As stated previously, the Court gives deference to the ALJ's decision, and does not reweigh evidence, decide credibility determinations, and does not substitute its own judgment for that of the ALJ.

The Court finds the ALJ did not make any errors of law and her findings of fact are supported by substantial evidence. The ALJ considered Plaintiff's full-time work after his injury and termination unrelated to his injury, inconsistent testimony by Plaintiff regarding pain and medical treatment records, and testimony regarding the fact he is able to work with the restrictions outlined in her decision. Such evidence is evidence that a reasonable person would find sufficient to support a decision. The Court does not find remand is appropriate.

## Conclusion

After careful review of the record as a whole, the Court is convinced that ALJ Campbell committed no errors of law and that his findings are supported by substantial evidence.

Accordingly, the final decision of the Commissioner of Social Security denying Plaintiff's applications for DIB, a period of disability, and SSI is AFFIRMED.

The Clerk of Court is DIRECTED to enter judgment in favor of the Commissioner.

**IT IS SO ORDERED.**
**Dated: August 22, 2022**

**/s/  J. Phil Gilbert\_\_\_\_**
**J. PHIL GILBERT**
**DISTRICT JUDGE**